**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| In re: | Chapter 7 |
|  | Case No. 10-46356-MSH |
| PHILIP MARKHAM AND PAMELA L. MARKHAM |  |
| Debtors |  |

**MEMORANDUM OF DECISION ON DEBTORS' MOTION TO COMPEL CHAPTER 13 TRUSTEE TO TURN OVER UNDISTRIBUTED FUNDS TO DEBTORS**

Philip and Pamela Markham, the debtors in this case, seek return of $19,515.32 in payments they made to Denise M. Pappalardo, the standing chapter 13 trustee in this division, pursuant to a confirmed chapter 13 plan, which payments the trustee had not yet distributed when the Markhams' chapter 13 case was converted to chapter 7. The trustee opposes the Markhams' motion because she believes that the money should be distributed in accordance with the terms of the confirmed plan despite the conversion of the case. The chapter 7 trustee of the Markhams' bankruptcy estate has made no claim to the funds.

The facts are undisputed. On December 30, 2010, the Markhams filed a voluntary petition for relief under chapter 13 of the U.S. Bankruptcy Code (11 U.S.C. § 101 *et seq.*). They proposed a plan that would pay all creditors 100% of their claims. On April 16, 2012, the plan was confirmed by order of this court. Pursuant to the confirmed plan, the Markhams were to make 60 monthly payments of $1,857 each to the chapter 13 trustee. Unlike many other jurisdictions where property of the bankruptcy estate re-vests in the debtor at plan confirmation, in this district and specifically in this case, the confirmation order provided that the property of

1

the estate would vest in the Markhams only upon discharge, which typically occurs when all plan payments are completed.

In February 2013, Mr. Markham lost his job and the Markhams were unable to maintain their plan payments. On May 28, 2013, they sought and obtained conversion of their chapter 13 case to one under chapter 7 of the Bankruptcy Code. As of the date of conversion, the chapter 13 trustee had accumulated $19,153.32 in payments under the Markhams' plan which had not yet been distributed to creditors and others entitled to plan payments.[1]

Whether the Markhams or their creditors are entitled to the funds currently being held by the chapter 13 trustee is purely a question of law. But while the question is clear the answer is not. The Bankruptcy Code offers only hints and the courts are divided. In a slightly different context, the issue has been described as an enigma. *Young v. Key Bank of Maine (In re Young)*, 66 F.3d 376, 377 (1st Cir. 1995).

In the search for enlightenment it is best to begin with foundational principles. One such principle, which seems to pervade all discussion of the issue at hand, is the concept of the bankruptcy estate. The commencement of a bankruptcy case creates an estate. Bankruptcy Code § 541(a). The estate, which is a corpus of tangible and intangible property, becomes enveloped in the protection of and subject to treatment by the Bankruptcy Code. *Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*, 335 B.R. 253, 259 (B.A.P. 1st Cir. 2005) *aff'd*, 482 F.3d 15 (1st Cir. 2007) ("Section 541 is construed broadly to bring any and all of the debtor's property rights within the bankruptcy court's jurisdiction and the umbrella of protections granted

---

[1] The timing of dividend distributions to creditors by a chapter 13 trustee is largely unregulated. Bankruptcy Code § 1326(a)(2) requires merely that upon plan confirmation the trustee distribute payments in accordance with the plan "as soon as practicable."

by the Bankruptcy Code…."). The chapter 13 bankruptcy estate is considerably more expansive than its chapter 7 counterpart. While the chapter 7 estate includes all property of the debtor as of the bankruptcy petition date as identified in § 541, the chapter 13 estate includes that property as well as property acquired post-petition, whether of the kind specified in § 541 or resulting from the debtor's post-petition earnings.[2]

The Bankruptcy Code permits (but does not require) a chapter 13 plan to provide for the re-vesting of the estate in the debtor (in other words the termination of the chapter 13 bankruptcy estate) upon plan confirmation. Bankruptcy Code § 1322(b)(9). In the District of Massachusetts all confirmation orders, including the Markhams', provide for the chapter 13 estate to continue and not re-vest in the debtor until completion of all plan payments. *See* Mass. L. Bankr. R. App. 1 Rule 13-11(c) and Official Local Form 4. Thus as long as the Markhams' case remained in chapter 13, undistributed plan payments, having been derived from the Markhams' post-petition earnings,[3] would constitute property of their bankruptcy estate.

---

[2] Bankruptcy Code § 1306 provides in relevant part:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

[3] There has been no suggestion that the undisbursed plan fund in the possession of the trustee in this case was derived from anything other than the Markhams' post-petition earnings. Had it been generated, say, by the sale of an asset owned by them pre-petition, the undisbursed fund arguably would be property of the Markahms' chapter 7 estate and the chapter 7 trustee would be

3

Things start to get interesting when a chapter 13 case converts to chapter 7. Because of the difference in scope of the estate as between the two chapters and the absence prior to 1994 of specific guidance in the Bankruptcy Code, courts were in disagreement as to the classification of undisbursed plan funds upon conversion. *Young*, 66 F.3d at 378 (citing the split exemplified by *In re Bobroff,* 766 F.2d 797, 803 (3d Cir.1985) (post-petition earnings did not become part of the chapter 7 estate upon conversion) and *Matter of Lybrook,* 951 F.2d 136, 137 (7th Cir.1991) (chapter 13 post-petition earnings flowed into the chapter 7 estate upon conversion)).

In 1994 Congress enacted Bankruptcy Code § 348(f) to resolve the case law conflict. § 348(f) provides in relevant part:

> (1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter of this title─
>
> (A) property of the estate in the converted case shall consist of property of the estate as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;…
>
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter of this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

Thus, except in situations involving bad faith,[4] property acquired after commencement of a chapter 13 case, ordinarily estate property under § 1306, does not remain estate property upon conversion to another chapter of the Bankruptcy Code. Section 348(f) codifies the holdings in cases such as *Bobroff* , rejecting those in cases like *Lybrook*. Presumably, § 348(f) is the reason why the chapter 7 trustee in the Markhams' converted case has stayed entirely on the sidelines in

---

laying claim to it. *See* Bankruptcy Code § 348(f) discussed later in this memorandum. *See also In re Pegues*, 266 B.R. 328, 332 n.16 (Bankr. D. Md. 2001).

[4] No one claims that this case involves a bad faith conversion.

4

this dispute.

So based on § 348(f), no matter how one chooses to categorize the undistributed plan fund in the possession of the chapter 13 trustee in this case, property of the Markhams' bankruptcy estate it is not. But just because the Markhams' plan fund is not property of the estate, it does not necessarily follow that the fund belongs to the Markhams.

The same way courts took divergent approaches to determining what constitutes estate property in a converted chapter 13 case prior to the enactment of § 348(f), courts are now split on the question of who gets undistributed plan funds when a chapter 13 case with a confirmed plan is converted to chapter 7. *Compare In re Michael*, 699 F.3d 305, 314 (3d Cir. 2012) (money goes back to the debtor), *with Spero v. Porreco (In re Porreco),* 426 B.R. 529, 537 (Bankr. W.D. Pa. 2010), *and In rePegues*, 266 B.R. 328, 336 (Bankr. D. Md. 2001) (money goes to the creditors). The fact that all courts agree that the funds are not property of the bankruptcy estate does not generate harmony in determining who gets the money. It is an enigma.

In *Michael*, the leading case in the pro-debtor camp, the debtor agreed to a wage attachment order permitting the chapter 13 trustee to receive the monthly payments called for in the debtor's confirmed plan which the trustee would in turn distribute to creditors, including GMAC, the debtor's mortgagee. The debtor was to make his post-petition mortgage payments directly to GMAC outside of his plan. When he defaulted on those payments, GMAC obtained relief from the automatic stay to foreclose its mortgage on the debtor's residence. All the while the wage attachment order remained in place and the trustee continued to accumulate plan funds. When the trustee attempted to pay GMAC, however, it refused to accept the distributions. Approximately three years after GMAC received stay relief, the debtor converted his case to one

5

under chapter 7 and sought the return to him of the funds in the chapter 13 trustee's possession consisting of GMAC's rejected distributions totaling over $9,000.00. The chapter 13 trustee objected, arguing that the money should be distributed to the debtor's unsecured creditors.

Judge Ambro, writing for the majority of a divided Third Circuit panel focused on the relative property rights of the debtor and creditors in the undistributed plan fund and concluded that the debtor retained a property interest in the fund even though it was in the possession of the trustee. As for the property rights of creditors, the majority opinion observed that nowhere in the Bankruptcy Code are creditors accorded a property interest in plan funds prior to the trustee's distributing those funds. *Michael*, 699 F.3d at 310 ("A chapter 13 creditor's interests do not vest until the monies are distributed.") (quoting *Arkison v. Plata (In re Plata),* 958 F.2d 918 (9th Cir. 1992)). The majority opinion elaborated:

> Conversion to a Chapter 7 case necessarily ends the Chapter 13 case, which also terminates that Chapter 13 estate. Section 348(f) clarifies what becomes of property of the now nonexistent Chapter 13 estate. It provides that property of the Chapter 7 estate "consist[s] of property of the estate, *as of the date of filing of the [Chapter 7] petition, that remains* in the possession of or is *under the control of the debtor on the date of conversion.*" 11 U.S.C. § 348(f)(1) (emphases added). Because § 1327(b) vests all property of the Chapter 13 estate in the debtor, including any post-petition property held by the Chapter 13 trustee at the time of conversion (such as funds transferred to the estate for eventual distribution to creditors), on conversion property of the Chapter 13 estate usually is "under the control of the debtor." And because § 348(a) establishes that conversion does not change the effect of the Chapter 13 petition's filing, the Chapter 7 petition date is deemed to be the same date that the debtor began the Chapter 13 case. Hence property acquired post-petition that is in the Chapter 13 estate at the time of conversion is not property of the new Chapter 7 estate. Rather, the debtor retains a vested interest in the property, and thereby the property reverts to the debtor on conversion, assuming that the debtor does not convert in bad faith

*Id.* at 313 (footnotes omitted).

The *Michael* majority buttressed its property rights analysis with its view that the legislative history of § 348(f) (indicating that Congress was codifying the ruling in *Bobroff*,

another Third Circuit decision) as well as the broader policy of the Bankruptcy Code to encourage chapter 13 reorganizations, justified favoring the debtor over creditors in the contest for undistributed plan funds upon conversion.

> Encouraging [debtors] to attempt to repay their debts through a reorganization plan rather than liquidate was the reasoning underlying our decision in *Bobroff*. We noted that [i]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts...In this context, holding that the Chapter 13 trustee must distribute undisbursed plan payments to creditors would contravene Congress's reasoning in adopting § 348(f).

*Id.* at 315 (internal citations and quotation marks omitted).

A critical factor in the *Michael* majority's holding that the debtor retained a property interest in the undisbursed plan fund, and a distinguishing factor from the case here, was that the plan in *Michael* provided for all property of the bankruptcy estate to re-vest in the debtor upon confirmation as permitted in Bankruptcy Code § 1322(b)(9). As noted previously, in this district generally and in this case particularly, chapter 13 estate property does not and did not re-vest in the debtors upon confirmation.

A hefty counterweight to *Michael* is provided by *Pegues, supra*, which offers a pro-creditor resolution of the conundrum presented here. As in *Michael*, *Pegues* involved direct employer wage payments made to the chapter 13 trustee to fund plan payments in accordance with a confirmed plan. When the debtor's mortgagee refused to accept its plan distributions so as to not jeopardize its foreclosure strategy, the trustee requested that the mortgagee's claim be disallowed and the money earmarked for the mortgagee be re-distributed to the debtor's other creditors. Before the trustee's request could be acted on, the debtor converted her case to chapter

7. Thereafter the bankruptcy court denied the chapter 13 trustee's request but the trustee sought reconsideration.

Like the majority in *Michael*, the court in *Pegues* concluded that determining the proper recipient of undisbursed plan funds required identifying who had the paramount property interest in those funds. Unlike *Michael*, however, the *Pegues* court held that once a debtor made a plan payment pursuant to a confirmed plan the debtor relinquished all rights in the payment and at the same instant creditors acquired a property interest in the payment by virtue of their right to receive a share. Interestingly, *Pegues* does not mention whether in the case before it the plan or confirmation order called for property of the estate to re-vest in the debtor upon confirmation and thus that consideration does not appear to have played a role in the court's analysis.

In arriving at its ruling the court in *Pegues* cited Bankruptcy Code § 1326(a)(2) which provides that if a plan is *not* confirmed the chapter 13 trustee must return any undisbursed plan payments to the debtor; deducing that when a plan *is* confirmed the opposite must obtain.

> [T]his conclusion gives effect to the specific limitation in the debtor's right to refund set forth in Section 1326(a)(2), which states in part: "[*i*]*f a plan is not confirmed,* the Trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under Section 503(b) of the title." (Emphasis added). This court concludes that a debtor has no right to plan payments after confirmation of a plan, except where excess funds remain after all distributions authorized by the plan have been made in full. *See In re Lennon,* 65 B.R. [130] at 135 [(Bankr. N.D. Ga. 1986)]. This "exception[ ] to possession... indicate[s] that debtor is to have no continuing interest in payments actually made pursuant to a confirmed plan... The creditors' right to payment matures at the time each payment is made to the trustee pursuant to the confirmed plan." *Id.* at 136. When the creditors receive payment from the chapter 13 trustee, their rights are satisfied.

*Pegues*, 266 B.R. at 336.

I agree with the cases, like *Pegues*, which favor the rights of creditors over those of debtors in undistributed funds held by a chapter 13 trustee pursuant to a confirmed plan. This

8

view is not shaped solely by weighing the relative property interests of the parties, although I think *Pegues* gets the better of *Michael* on this point, especially when estate property does not re-vest in a debtor upon confirmation. By looking beyond property rights to the relationships and restrictions created upon entry of an order confirming a chapter 13 plan, the paramount rights of creditors emerge into clearer focus.

Bankruptcy Code § 1327(a) provides that "the provisions of a confirmed plan bind the debtor and each creditor…" A confirmed chapter 13 plan has been likened to a contract between a debtor and his creditors. *Lacey v. Stinky Love, Inc. (In re Lacey)*, 304 B.R. 439, 444 (D. Colo. 2004). An order confirming a chapter 13 plan is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation. *In re Dorsey*, 505 F.3d 395, 399 (5th Cir. 2007); *Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (B.A.P. 1st Cir. 2001). Judge Roth in his dissent in *Michael* nicely harmonizes these principles in support of his view that the undistributed plan funds should be paid to creditors:

> Once a reorganization plan is confirmed, the relationship between the debtors and creditors change; the provisions of the plan bind the parties, generating benefits and corresponding responsibilities. 11 U.S.C. § 1327(a); *see Ledford v. Burns (Matter of Burns),* 90 B.R. 301, 304 (Bankr. S.D. Ohio 1988) ("[A] Chapter 13 Plan represents a legislatively sanctioned, and judicially approved new series of rights and responsibilities among the debtor and the debtor's creditors"). In fact, under a confirmed plan, each party receives a benefit. The debtor is entitled to continue "receiving whatever benefits [ ]he believed were significant enough for [him] to have converted to and proceeded in Chapter 13," *In re Bell,* 248 B.R. [236] at 239 [(Bankr. W.D.N.Y. 2000)], and the creditors receive the money paid into the Chapter 13 estate, *In re Pegues,* 266 B.R. at 336. Thus, the debtor makes payments in order to fulfill his obligations under the reorganization plan and in exchange for the benefits he derives from the plan. *In re Bell,* 248 B.R. at 239; *see In re Lennon,* 65 B.R. 130, 136 (Bankr. N.D. Ga.1986) ("These payments are specifically earmarked and set aside for distribution to creditors provided for by the confirmed plan").

*Michael*, 699 F.3d at 320 (footnotes omitted) (Roth, J, dissenting).

The *Michael* majority attempts to avoid the obvious implications of the legal truisms summarized in the dissent by suggesting that conversion from chapter 13 to chapter 7 results in the "vacating" of the chapter 13 plan thus relieving the parties from their binding obligations thereunder. *Id.* at 312.

Nothing in the Bankruptcy Code supports the view that conversion vacates a chapter 13 plan or the order confirming it. Bankruptcy Code § 348 entitled "Effect of Conversion" enumerates the various legal consequences of converting a case from one chapter of the Code to another. For example, upon conversion of a chapter 7, 11, 12 or 13 case, the services of a trustee are terminated. Bankruptcy Code § 348(e). Nowhere in § 348 nor in any other provision of the Bankruptcy Code is there a suggestion that conversion from chapter 13 to chapter 7 vacates a confirmed plan. Bankruptcy Code § 1330 governing revocation of an order of plan confirmation does not include conversion as a triggering event or ground for revocation. Bankruptcy Code § 349, which is the mirror image of § 348 and is entitled "Effect of Dismissal," provides that dismissal "vacates any order, judgment or transfer ordered under sections 522(i), 542, 550 or 553" of the Bankruptcy Code. This suggests that if Congress intended conversion to effect the vacating of any order it would have said so explicitly in § 348.

FED. R. BANKR. P. 1019 implements Bankruptcy Code § 348 and sets forth procedures to be followed when a chapter 13 case with a confirmed plan is converted to chapter 7. The Advisory Committee Note to Rule 1019 states that the "rule is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7." *In re Kaleidoscope of High Point, Inc.*, 56 BR 562, 565 (Bankr. M.D.N.C. 1986). Were conversion to trigger the vacating of a confirmed chapter 13 plan, a secured creditor who took surrendered collateral in

satisfaction of its claim pursuant to the plan and Bankruptcy Code § 1325(a)(5)(c) would be faced with the possibility of having to return the collateral to a chapter 7 trustee if the case were later converted. Secured creditors would be forced to hold on to collateral for the life of a plan to guard against the risk of conversion and disgorgement. Chapter 13 would become unworkable.

A more apt description of the effect that conversion from chapter 13 to chapter 7 has on a confirmed plan is suggested by Judge Roth in his dissent in *Michael*. Conversion constitutes a breach by the debtor of his implicit obligation to maintain the chapter 13 case for the life of the plan. This breach in turn results in the debtor's ceasing to make plan payments which is a further breach. Viewed in the context of contract analysis (remember, the plan is a contract between the debtor and creditors) awarding undisbursed plan funds to the non-breaching creditors becomes a compelling remedy. "The object of a [sic] damages for breach of contract is to put the non-breaching party in the position it was in prior to the breach." *In re Admetric Biochem, Inc.*, 284 B.R. 1, 11 (Bankr. D. Mass. 2002).

Entirely apart from using a contract analysis to apportion the rights of constituencies in undisbursed plan funds, favoring the rights of creditors in those funds is mandated by principles of judicial finality. As stated previously, an order confirming a chapter 13 plan has *res judicata* effect. To obtain such an order a debtor makes a commitment in his or her plan to pay creditors a sum of money in full or partial satisfaction of their claims. Having paid some of that money to the trustee for distribution to creditors, a debtor is judicially estopped from later asserting a right to recover the funds. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has

11

acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895); *Perry v. Blum,* 629 F.3d 1, 8 (1st Cir. 2010).

In summary, when a chapter 13 case with a confirmed plan is converted to chapter 7, the debtor has no interest in undisbursed plan payments derived from the debtor's post-petition earnings in the possession of the trustee. Those funds must be paid to creditors. A separate order denying the Markhams' turnover motion shall enter.

At Worcester, Massachusetts this 31st day of December, 2013.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Edwin H. Howard, Esq.
                     Bonville & Howard
                     Fitchburg, MA
                     for Philip and Pamela Markham

                     Denise M. Pappalardo, Esq.
                     Worcester, MA
                     Chapter 13 trustee